**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| RAMAZAN MIRZOEV, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | No. 25-cv-12969 |
| v. | ) | |
| | ) | Judge April M. Perry |
| SAM OLSON, Field Office Director of | ) | |
| Enforcement and Removal Operations, | ) | |
| Chicago Field Office, Immigration and | ) | |
| Customs Enforcement; and BRANDON | ) | |
| CROWLEY, Jail Commander for the Clay | ) | |
| County Detention Center, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

## OPINION AND ORDER

Ramazan Mirzoev ("Petitioner"), a citizen of Russia, petitions this Court for a writ of

habeas corpus under 28 U.S.C. § 2241. On October 23, 2025, Petitioner was arrested at a rest

stop in Illinois and detained at the Broadview Processing Center, a federal detention facility

located in Broadview, Illinois. Petitioner has been in the United States since 2023 and has an

application for asylum pending. He was arrested on what would have been his first day of work

as a truck driver, a job for which he had been given a work permit. Petitioner has no criminal

history. No bond hearing has been held to determine whether Petitioner is a flight risk or danger

to others. Mirzoev's petition, brought against officers and agencies (collectively,

"Respondents")[1] involved in the enforcement of federal immigration laws, challenges the

lawfulness of his detention.

---

[1] The petition names "Warden Doe, Warden of Broadview Processing Center" as one of the Respondents,
but Respondents have indicated that Petitioner is currently housed at the Clay County Detention Center in

For the following reasons, the petition for a writ of habeas corpus is granted.

## ANALYSIS

A district court may grant a petitioner's request for a writ of habeas corpus if the petitioner demonstrates that he is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3). Petitioner contends that Respondents are holding him unlawfully, in violation of both the Immigration and Nationality Act ("INA") and his Fifth Amendment due process rights. Petitioner asks the Court to issue a writ ordering Respondents to release him from custody or, in the alternative, to provide Petitioner with a bond hearing.

Respondents argue that the Court should not reach the merits of this petition for two reasons.[2] First, Respondents argue that 8 U.S.C. §§ 1252(g), 1252(b)(9), and 1252(a)(2)(B)(ii) strip this Court of jurisdiction to hear this matter. Second, Respondents argue that Petitioner failed to exhaust his administrative remedies. The Court disagrees on both fronts.

Beginning with Respondents' first argument: it is true that the INA in certain instances limits the jurisdiction that district courts may exercise. For example, 8 U.S.C. § 1252(g) states

---

Brazil, Indiana. *See* Doc. 7 at 1. The "default rule is that the proper respondent is the warden of the facility where the prisoner is being held," and that "the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release." *Gamboa v. Daniels*, 26 F.4th 410, 414 (7th Cir. 2022), quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004). This rule ensures that "the objective of habeas relief be in no way impaired or defeated by the removal of the prisoner from the territorial jurisdiction of the District Court." *Rumsfeld*, 542 U.S. at 441 n. 14 (cleaned up). The Court therefore removes from the case caption "Warden Doe" of the Broadview Processing Center, as well as Pamela Bondi, Kristi Noem, the U.S. Department of Homeland Security, and the Executive Office for Immigration Review. Brandon Crowley, Jail Commander for the Clay County Detention Center and Sam Olson, Field Office Director of Enforcement and Removal Operations, Chicago Field Office will be the Respondents responsible for effectuating the relief ordered by the Court.

[2] To put a finer point on it: Respondents have adopted and attached their brief submitted in *H.G.V.U. v. Smith*, 25 CV 10931 (N.D. Ill.). *See* Doc. 10-1 at 22–53. Respondents acknowledge that the *Smith* court did not adopt their arguments.

that no court "shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252(g). This "statute does not sweep broadly; only challenges to the three listed decisions or actions … are insulated from judicial review." *E.F.L. v. Prim*, 986 F.3d 959, 964 (7th Cir. 2021). The "decision to confine" a noncitizen is not one of these three enumerated decisions. *Carrera-Valdez v. Perryman*, 211 F.3d 1046, 1047 (7th Cir. 2000); *see also Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 591 U.S. 1, 19 (2020) (rejecting argument that Section 1252(g) covers all claims arising from deportation proceedings as "implausible"). In this case, Petitioner challenges only the lawfulness of his detention without a bond hearing, not the commencement of proceedings, adjudication of his case, or execution of any removal order. Thus, Section 1252(g) does not prevent this Court from hearing Petitioner's case.

Similarly, 8 U.S.C. § 1252(b)(9), which designates the federal Courts of Appeal as the exclusive forum for "judicial review of all questions of law and fact … arising from any action taken or proceeding brought to remove an alien from the United States," does not apply in this case. 8 U.S.C. § 1252(b)(9). In *Jennings v. Rodriguez*, the Supreme Court held that this section only presents a jurisdictional bar to petitioners "asking for review of an order of removal," "the decision to detain them in the first place or to seek removal," or "the process by which their removability will be determined." 583 U.S. 281, 294–95 (2018). Here, Petitioner is not challenging an order of removal, a decision ordering him detained, or the process governing how his removability will be determined. Rather, Petitioner is challenging the absence of any individualized detention decision or procedure in his case. Section 1252(b)(9) is therefore inapplicable.

Finally, Respondents invoke 8 U.S.C. § 1252(a)(2)(B)(ii), which precludes district court review of decisions by the Attorney General or Secretary of Homeland Security "the authority for which is specified under this subsection to be in [their] discretion." 8 U.S.C. § 1252(a)(2)(B)(ii). This provision also does not apply to this case. As explained further below, Petitioner challenges whether Respondents have legal authority to hold him in custody without a bond hearing. Thus, Petitioner's challenge goes to the extent of the government's statutory detention power, which is "not a matter of discretion." *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001).

The Court also rejects Respondents' argument that Petitioner cannot seek habeas relief before first requesting a bond hearing from the Board of Immigration Appeals ("BIA"). "[W]here Congress has not clearly required exhaustion, sound judicial discretion governs" whether to impose it as an obstacle to federal suit. *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). Courts decline to require exhaustion if "appealing through the administrative process would be futile because the agency … has predetermined the issue." *Gonzales v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004). Here, requiring Petitioner to ask the BIA for a bond hearing would be futile given BIA's recent conclusion that it "lack[s] authority to hear bond requests or to grant bond to aliens who are present in the United States without admission." *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (B.I.A. 2025). The Court concludes exhaustion is not a bar to Petitioner's case.

Having resolved Respondents' threshold challenges, the Court turns to the merits. Petitioner contends habeas relief is warranted for two reasons. First, he argues his detention by Respondents violates the INA, as noncitizens already in the United States when detained are

4

entitled to a bond hearing. Second, he argues his detention is unlawful because by not providing him a bond hearing, Respondents have violated Petitioner's constitutional right to due process.

The Court begins with the argument that Petitioner's detention without a bond hearing violates the INA. The ability to detain noncitizens pending removal is set forth in 8 U.S.C. §§ 1225 and 1226. Petitioner contends his detention is governed by Section 1226(a), which allows for a bond hearing before the prolonged detention of noncitizens "already present in the United States." *Jennings*, 583 U.S. at 303. At that hearing, a noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397–98 (2019). In contrast, Respondents insist Petitioner was detained pursuant to Section 1225(b)(2)(A), which mandates detention of a noncitizen who "is an applicant for admission" into the United States if "an immigration officer determines that [the] alien seeking admission is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A).

The Court does not agree with Respondents that Section 1225(b)(2)(A) applies to all noncitizens, regardless of how long they have been present in the United States. Joining the chorus of other courts to have considered this argument,[3] the Court rejects Respondents' interpretation that Section 1225(b)(2)(A) applies to those like Petitioner who are found in the United States on grounds that it "(1) disregards the plain meaning of § 1225(b)(2)(A); (2) disregards the relationship between §§ 1225 and 1226; (3) would render a recent amendment to § 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and

---

[3] *See, e.g.*, *Corona Diaz v. Olson,* 2025 WL 3022170, at *4–5 (N.D. Ill. Oct. 29, 2025); *Miguel v. Noem*, 2025 WL 2976480, at *4–5 (N.D. Ill. Oct. 21, 2025); *Ochoa Ochoa v. Noem et al.*, 2025 WL 2938779, at *5 (N.D. Ill. Oct. 16, 2025); *Alejandro v. Olson*, 2025 WL 2896348, at *6 (S.D. Ind. Oct. 11, 2025).

practice." *Alejandro v. Olson*, 2025 WL 2896348, at *6 (S.D. Ind. Oct. 11, 2025). Consistent

with the reasoning of the *Alejandro* court and the many others which have joined it, the Court

concludes that Section 1226(a)—not Section 1225(b)(2)(A)—governs Petitioner's case.[4]

Because Respondents' authority to detain Petitioner arises from Section 1226(a),

Petitioner's detention is discretionary, not mandatory. Moreover, Petitioner is entitled to the

protections of the Due Process Clause when that discretionary detention decision is made.

*Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention,

or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process

Clause] protects."). To determine whether a governmental decision violates the Due Process

Clause, courts consider "the private interest that will be affected," "the risk of an erroneous

deprivation of such interest through the procedures used," and "the Government's interest,

including the function involved and the fiscal and administrative burdens that … the additional

or substitute procedural requirement would entail." *Matthews v. Eldridge*, 424 U.S. 319, 335

(1976). These constitutional protections extend to noncitizens because "the Due Process Clause

applies to all 'persons' within the United States, including aliens, whether their presence here is

lawful, unlawful, temporary, or permanent." *Zadvydas,* 533 at 693.

---

[4] At a status hearing on October 30, 2025, Respondents hypothesized that Petitioner may not be similarly situated to the many other habeas petitions received by this Court. There are no arguments specific to Petitioner in Respondent's brief. *See* Doc. 10. To the extent Respondents might have argued Petitioner's pending asylum application means he is "seeking admission" within the meaning of Section 1225(b)(2)(A), the Court disagrees. Similar facts were presented in *Lopez Benitez v. Francis*, 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025), which also involved a habeas petitioner who had lived in the United States for two years and applied for asylum before his detention. As that court found, when an individual who has been residing for years in the United States applies for asylum, what they seek is not "admission" or "lawful entry" but a "lawful means to *remain*." *Lopez Benitez*, 2025 WL 2371588, at *6 n. 7 (emphasis in original).

6

The Court finds Petitioner has a substantial private interest in securing his release from custody or, short of that, an individualized bond hearing regarding his detention. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) ("[T]he most elemental of liberty interests [is] the interest in being free from physical detention by [the] government."). The Court finds further that Respondents' decision to detain Petitioner without a bond hearing to assess whether he is a flight risk or danger to the community raises a severe risk of erroneous deprivation of Petitioner's rights.[5] And the Court concludes that Respondents' interest in depriving Petitioner of a hearing is minimal. Accordingly, the Court finds that Petitioner's detention without a hearing violates not only the INA but also Petitioner's Fifth Amendment due process rights, which entitles him to a writ of habeas corpus.

## CONCLUSION

Petitioner's petition for a writ of habeas corpus is granted. Within seven days of issuance of this Order, Respondents must either release Petitioner from custody, under reasonable conditions of supervision, or afford Petitioner a bond hearing under 8 U.S.C. § 1226(a). Because this order provides the full relief to which Petitioner is entitled, the Clerk shall enter a final judgment order in favor of Petitioner and terminate this civil case.

Dated: November 6, 2025

_____
APRIL M. PERRY
United States District Judge

---

[5] The Court notes that Petitioner has been in the United States for two years and has no criminal history. These factors indicate that it is by no means a foregone conclusion that Petitioner is a risk of flight or danger to the community.